UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSHUA SNIDER,

    Plaintiff,

v.

MATTHEW JEX and
UNKNWON KERR,

    Defendants.
_____/

Case No. 1:20-cv-1252

Hon. Hala Y. Jarbou

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action brought pursuant to 42 U.S.C. § 1983 by Joshua Snider (referred to as "plaintiff" or "Snider"), is former state prisoner of the Michigan Department of Corrections (MDOC). Snider was released on parole on or about January 22, 2021. *See* Letter (ECF No. 5). Snider's complaint involves conditions of his/her confinement at the Ionia Correctional Facility (ICF).[1]

    **I.**    **Background**

Snider alleged that he/she is diagnosed with a serious mental disorder. Compl. (ECF No. 1, PageID.4). Snider's claims in this lawsuit occurred in March 2020. On March 4, 2020, Snider was moved to a new cell which lacked a heating vent. *Id*. Snider complained to defendants Assistant Resident Unit Supervisor (ARUS) Matthew Jex and Sgt./Lt. Unknown Kerr. *Id*. at PageID.4-6. At some time in March 2020, the toilet in the cell stopped functioning properly,

---

[1] Snider uses the pronoun "his/her." *See* Compl. (ECF No. 1, PageID.6, 9, 11).

and would not flush for four or five days.  *Id*. at PageID.8.  When Snider asked defendants to contact maintenance, defendant Jex allegedly told him/her that "this is what you get for makin[g] complaints [and] filing grievances . . . on staff . . . . Take the bitter with the sweet."  *Id*. at PageID.5.  Snider also complained that he/she became ill with a cold, experienced shortness of breath, pain in the chest, stomach flu, depression, a panic attack and thoughts of self-harm.  *Id*. at PageID.9, 11.  Plaintiff also listed a date of April 6, 2020.  *Id*. at PageID.11. The significance of this day is not clear.  *Id*.[2]  Snider alleged violations of her First, Eighth and Fourteenth Amendment rights.  *Id*. at PageID.9.  Snider's relief includes declaratory relief, compensatory damages and punitive damages.  *Id*. at PageID12.

    II.    **Defendants' motion for summary judgment**

        A.    **Legal standard for summary judgment**

Defendants Jex and Kerr seek summary judgment on the ground that Snider failed to exhaust his/her administrative remedies prior to filing this lawsuit.  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

---

[2] Snider's complaint is difficult to follow and at times unintelligible.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

"The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). The trial court is required to "intelligently and carefully review the legitimacy of such unresponded-to motion" and cannot "blithely accept the conclusions argued in the motion." *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 407 (6th Cir. 1992). However, when a motion for summary judgment is unopposed, "[n]othing in either the Rules or case law supports an argument that the trial court must conduct its own probing investigation of the record" to demonstrate the existence of genuine issues of material fact. *Id*. at 405.

### B.    Failure to Exhaust

#### 1.    Exhaustion requirement

The PLRA provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See*

3

*Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218. Finally, even if a prisoner complies with the grievance procedures, the grievance must give fair notice of the misconduct or mistreatment as measured against the claim alleged in the prisoner's complaint. *See Bell v. Konteh*, 450 F.3d 651, 654 (6th Cir. 2006).

  **2.**  **MDOC Grievance process**

  The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective March 18, 2019). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at

4

¶¶ Q and S.  The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely.  Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how).   Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ S (emphasis in original).  The prisoner must send the Step I grievance to the appropriate grievance coordinator.  *Id.* at ¶ W.  If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator.  *Id.* at ¶ DD.  Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section.  *Id.* at ¶ HH.

  **3.**  **Discussion**

Snider's MDOC Prisoner Step III Grievance Report (ECF No. 14-3, PageID.87-89) does not list any exhausted grievances filed in March 2020.  The report includes a grievance which Snider filed on May 1, 2020, and appealed through Step III on October 20, 2020.  *See* ICF -20-05-0637-28b ("637") at PageID.87.  That grievance, which was originally rejected at Step I, was directed against non-parties "PA/Doctor Huyge, Humm Labarre, Gaskill, Dr. Schmidt" for an incident which occurred on April 20, 2020.  Grievance 637 at PageID.103-104.

Matthew Ferguson, acting grievance coordinator at ICF, prepared a separate affidavit regarding all grievances which Snider filed between March and May, 2020.  Ferguson Aff. (ECF No. 14-4, PageID.97).  Ferguson identified four grievances filed between those dates. Of these four, Snider filed only one grievance in March 2020, that being ICF-20-03-0441-28B ("441").  *See* Prisoner Grievance Summary Report (ECF No. 14-4, PageID.100); Grievance 441

5

(ECF No. 14-4, PageID.101-102). Grievance 441 involved an incident date of March 23, 2020, on which Snider complains that he/she asked ARUS Jex "for phone to call lawer [sic], PREA Hot Line Ect [sic]!!." Grievance 441 at PageID.101. The grievance was rejected because it was vague/illegible/extraneous pursuant to Policy Directive 03.02.130. *Id*. at PageID.102. There is no evidence that plaintiff took steps to correct the deficiencies or made any attempt to exhaust this grievance. Furthermore, Grievance 441 does not address the plaintiff's claims alleged in the complaint, *i.e.*, that he/she was transferred to a cold cell and that defendants would not repair her toilet. The remaining three grievances identified by Ferguson were Grievance 637 and two other grievances filed in May 2020, ICF 20-05-0708-28B ("708") and ICF 20-05-0709-28B ("709"). Grievances 708 and 709 were rejected at Step I as being vague, illegible and extraneous, involved incident dates of May 15, 2020, and did not involve the incidents alleged in the complaint. *See* Grievance 708 at PageID.107-110; Grievance 709 at PageID.111-114.[3]

Based on this record, Snider did not properly exhaust a grievance against defendants with respect to the incidents alleged in the complaint. *Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93. Accordingly, defendants' motion for summary judgment should be granted.

---

[3] Snider points out that he/she was on "modified access" in January and February 2020. *See* Attachments (ECF No. 1-1); Policy Directive 03.02.130 ¶ JJ ("A prisoner or parolee who files an excessive number of grievances (three within a 30 calendar day span) that are rejected or the prisoner is found guilty of misconduct for filing an unfounded grievance as set forth in Paragraph M, may have access to the grievance process limited by the Warden or FOA Region Manager for an initial period of not more than 90 calendar days."). Even if plaintiff was on modified access in March 2020, he/she could still exhaust grievances. *See Walker v. Michigan Department of Corrections*, 128 Fed. Appx. 441, 446-447 (6th Cir. 2005). In this regard, plaintiff did not oppose the motion for summary judgment as required by W.D. Mich. LCivR 7.2(c).

### III.     Recommendation

For the reasons set forth above, I respectfully recommend that defendants' motion for summary judgment (ECF No. 13) be **GRANTED** and that this action be terminated.


Dated:   May 10, 2022                                        /s/ Ray Kent
                                                             RAY KENT
                                                             United States Magistrate Judge


**ANY OBJECTIONS** to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.   All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).   Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.   *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).